# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>FUNDS IN THE AMOUNT OF $37,905,571.53 SEIZED FROM COMPANY A ACCOUNT NUMBER XXXX8688 HELD IN THE NAME OF MING-SHEN CHENG,<br><br>                Defendant. | No. 25 C 2965<br><br>Hon. Jorge L. Alonso |

## CLAIMANT'S REPLY IN SUPPORT OF HIS
## MOTION TO VACATE DEFAULT JUDGMENT

Claimant Ming-Shen Cheng, by and through undersigned counsel, respectfully submits this Reply in Support of his Motion to Vacate Default Judgment. In support, Mr. Cheng states as follows.

## PRELIMINARY STATEMENT

The government's opposition exposes a troubling pattern: unable to connect Mr. Cheng to any fraudulent scheme through its pleadings, it attempts to win by rhetoric rather than evidence. The government invokes "3,000 American victims" and a supposed "broader investigation of foreign influence," yet its own complaint fails to allege any link between Mr. Cheng and these inflammatory claims. This disconnect between the government's opposition briefing and its actual pleadings reveals the fundamental deficiency of its case.

Most tellingly, if the government possessed evidence connecting Mr. Cheng to any "co-schemers" or fraudulent activity, it could have—and would have—pled such evidence in its complaint or, at a minimum, attached it to its opposition. Its failure to do so speaks volumes.

1

Instead, the government asks this Court to rubber-stamp a $37 million forfeiture based on guilt by association and temporal correlation, denying Mr. Cheng his day in court based on allegations it cannot substantiate.

Mr. Cheng now asks this Court to vacate the default judgment because he has met all three factors required. None of the government's arguments to the contrary are persuasive.

Mr. Cheng has shown that good cause exists to vacate the default because Mr. Cheng's delay was due to his efforts to seek American counsel while living in a foreign country and his lack of familiarity with both the American judicial system and the English language. Courts have routinely found that a foreign defendant's efforts to obtain counsel constitute good cause in determining whether to vacate a default judgment.

Mr. Cheng also acted promptly to vacate the default judgment, and the government offers no compelling argument to the contrary. Rather, the cases it cites are inapposite and uniformly involve a defendant who offered no explanation for his delay, unlike Mr. Cheng, who has explained on several occasions the reason he did not answer the government's complaint in a timely manner.

Moreover, Mr. Cheng has several meritorious defenses to the government's complaint. He has cited extensive law and numerous factual bases for his defenses, which the government has been unable to comprehensively rebut. Mr. Cheng has argued that he has defenses to nearly every element of the offenses of wire fraud and securities fraud, which the government must establish in order to succeed on the merits of its claims. That the government disagrees with Mr. Cheng's view of the merits is not a reason to deny him his right to litigate them, but rather further evidence that there are genuinely disputed issues for a factfinder.

Because Mr. Cheng has established all three elements of the Rule 60 test, this Court should vacate the default judgment against Subject Account 2.

# ARGUMENT

## I. MR. CHENG IS NOT A FUGITIVE, AND THE GOVERNMENT'S CONTINUED EFFORTS TO AVOID THE MERITS BY LABELING HIM ONE SHOULD BE REJECTED

The government's opposition brief begins by continuing to press the meritless argument that Mr. Cheng should be barred from even making arguments before this Court by virtue of the fact that he is in Taiwan. Mr. Cheng has already demonstrated that he is not a "fugitive" under the fugitive disentitlement statute, Dkt. 17, and this Court has permitted him to seek relief from the default. Dkt. 18. The government's opposition offers nothing new on this point other than underscoring the government's reluctance to be put to its proof on the merits of its forfeiture claims.

## II. THERE IS GOOD CAUSE TO VACATE THE DEFAULT JUDGMENT

Good cause exists to vacate the default judgment, and the government's arguments to the contrary lack merit. The government cannot show willful conduct because Mr. Cheng's delay resulted from the inherent challenges of securing American counsel while residing in Taiwan. *See FTC v. Construct Data Publishers*, 2014 WL 7004999, at * 5 (N.D. Ill. Dec. 11, 2014) ("A party establishes good cause to vacate a default judgment by showing that 'it did not willfully ignore the pending litigation, but, rather, failed to respond to the summons and complaint through inadvertence.'").

The government's cited cases are inapposite. The defendants in *Tygris Asset Fin., Inc. v. Szollas*, 2010 WL 2610652, at *3 (N.D. Ill. June 21, 2010), and *Inquote Corp. v. Cole*, 2002 WL 483417, at *2 (N.D. Ill. Mar. 29, 2002), were domestic litigants from other states—not another country. Unlike Mr. Cheng, they were not non-English speakers attempting to retain counsel from abroad. *Lyons Partnership, L.P. v. Welle*, 2010 WL 680877 (N.D. Ill. Feb. 22, 2010), is equally distinguishable. There, the defendant cited "cash flow" problems and difficulty in hiring substitute

3

counsel. *Id.* at *2. Mr. Cheng never had any counsel before his current counsel was retained. Indeed, Mr. Cheng had no prior representation and could not appear until securing his first counsel—a process complicated by the difficulties foreign defendants face in obtaining specialized American legal representation. *See Strabala v. Zhang*, 318 F.R.D. 81, 91 (N.D. Ill. 2016) ("[I]t takes longer for a defendant located in a foreign country to find legal representation in the United States than a defendant in another state."). These difficulties are all the more acute for an individual who does not speak English.

*CFTC v. Garofalo*, 2010 WL 11245430 (N.D. Ill. Dec. 21, 2010), also relied upon by the government, Dkt. 32 at 15–16, is likewise distinguishable. While Mr. Cheng, like the defendant in *Garofalo*, did not respond to an email notification, the similarities end there. *Id.* at *4. The *Garofalo* defendant claimed both difficulty retaining foreign counsel and inability to afford representation—then retained counsel just two months later, undermining his financial hardship claim. *Id.* Moreover, unlike Mr. Cheng who received a single email, the *Garofalo* defendant received two notifications. The court found these shifting explanations and repeated failures to respond to notices undermined a showing of good cause. *Id.* Mr. Cheng has been consistent about the reasons for his delay, and those reasons are good ones.

The government's attempt to infer comprehension from Mr. Cheng's English emails ignores the fundamental distinction between basic correspondence and complex legal proceedings. The record directly contradicts this inference: Mr. Cheng's declarations establish that he required translation assistance to understand the legal documents he received. Dkt. 26-1 and 26-2 at ¶ 3. Despite this language barrier, he acted promptly to secure representation once he grasped the situation. The government offers no evidence that Mr. Cheng was dilatory in seeking counsel—

4

to the contrary, the record demonstrates Mr. Cheng's diligence and that his delay was due to "excusable neglect" under Fed. R. Civ. P. 60(b)(1).

Nor is there any merit to the government's attempt to distinguish the authority cited by Mr. Cheng based on the existence of "approximately 3,000 American retail investors," whose recovery, the government claims, Mr. Cheng has delayed simply by standing on his rights. The Rule 60 prejudice analysis considers whether the defendant's *adversary* suffers prejudice from the delay, not whether any third party suffers any prejudice, nor whether a delay in the defendant's adversary receiving his preferred outcome might affect him. *See Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 798 (7th Cir. 1980) (finding that any prejudice to the plaintiff needed to be due to the delay caused by the default rather than that caused by an ultimate reversal of the default); *see also Construct Data Publishers*, 2014 WL 7004999, at *6 (concluding there was no prejudice when the only prejudice suffered was that due to "a delay in the resolution of the case"). Here, Mr. Cheng's adversary is the United States government, not any of the alleged victims, and the government cannot identify any prejudice that it might suffer itself since all of the funds in Subject Account 2 are currently in the possession of the U.S. Marshals Service. In any event, this Court's default judgment is not a finding that any particular victim has been harmed or is entitled to any of the seized funds.

### III. MR. CHENG ACTED PROMPTLY TO MOVE TO VACATE THE DEFAULT JUDGMENT

Mr. Cheng also acted promptly to move this Court to vacate default judgment, and the government offers no compelling arguments to the contrary.

Mr. Cheng's prompt action in seeking vacatur stands in stark contrast to the dilatory conduct in the government's three cited cases. The government's reliance on *Jones v. Phipps*, 39 F.3d 158 (7th Cir. 1994), actually undermines its position: that defendant had full capacity to

respond before incarceration yet waited longer than Mr. Cheng to seek relief. *Id.* at 165. And the defendants in *Fair Hous. Ctr. of Cent. Ind. v. New*, 2021 WL 4949216, at *5 (S.D. Ind. Jan. 20, 2021), and *Sullivan v. Gen. Plumbing, Inc.*, 2007 WL 103023, at *4 (N.D. Ill. Mar. 31, 2007), offered nothing but bare conclusions to excuse their delays—no language barriers, no international obstacles, no detailed explanations whatsoever.

In contrast, Mr. Cheng has provided this Court with specific, credible reasons for his response timeline: the need for translation, the challenge of understanding American legal process, and the documented difficulties foreign nationals face in securing U.S. counsel. Given that the government identifies no prejudice beyond routine (and brief) litigation delay—and cannot dispute Mr. Cheng's diligent efforts once he understood the gravity of the situation—his response was unquestionably prompt under the circumstances.

## IV. MR. CHENG HAS MERITORIOUS DEFENSES

Mr. Cheng has presented meritorious defenses that warrant vacatur. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Bieganek v. Taylor*, 801 F.2d 879, 882 (7th Cir. 1986). The government fundamentally misapprehends this standard by suggesting that merely alleging elements of a claim forecloses any defense. This circular reasoning would eviscerate Rule 60(b) and deny every defendant their day in court.

Mr. Cheng's substantive defenses exemplify what courts require to warrant vacatur. While courts properly dismiss "general denials" and "bare legal conclusions," *Pretzel & Stouffer, Ctd. v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994) (internal quotation marks omitted), Mr. Cheng has submitted sworn declarations and extensive legal analysis addressing each element of the government's claims. The deficiency in *Acosta v. DT & C Global Mgmt., LLC*, 874 F.3d 557, 562 (7th Cir. 2017), illustrates the difference: that defendant offered only vague assertions that he had "defenses of good faith and that the amounts awarded are excessive and he has not received

6

all credits he and other defendants should have with respect to the judgment amount." *Id.* He did not elaborate on what his defenses might be or state any facts or law that might have supported him. Mr. Cheng, by contrast, has identified specific gaps in the government's allegations, cited controlling authority, and provided factual evidence through declarations. These concrete, evidence-based defenses are precisely what transform a default judgment into a case requiring determination by a factfinder.

Mr. Cheng has dismantled the government's forfeiture claims through sworn declarations and detailed legal analysis. *See* Dkt. 17-1, 19, 26-1. He has demonstrated that the government cannot establish the predicate requirements for forfeiture under either 18 U.S.C. § 981(a)(1)(A) (requiring funds "involved in a transaction or attempted transaction in violation of section [] 1957") or § 981(a)(1)(C) (requiring funds "derived from proceeds traceable to" wire or securities fraud violations). *See* Dkt. 26 at 12–17.

The government's burden is clear. For wire fraud, it must prove Mr. Cheng participated in a scheme to make "a material false statement, misrepresentation, or promise, or [to] conceal[] a material fact." *United States v. Weimert*, 819 F.3d 351, 355 (7th Cir. 2016). For securities fraud, it must establish: (1) fraudulent intent; (2) a scheme or artifice to defraud; and (3) a nexus with a security. *United States v. Coscia*, 866 F.3d 782, 796 (7th Cir. 2017).

The government fails on every wire fraud element. Its complaint contains no allegations that Mr. Cheng personally recommended CLEU stock purchases, and it alleges no facts that from which a factfinder could conclude that he bears any responsibility for CLEU's disclosure failures, can be culpable for co-defendants' statements, or engaged in spoofing or any manipulative trading. Dkt. 26 at 13–15. These are not minor pleading deficiencies—they are the core conduct required to establish wire fraud.

7

Recognizing these fatal gaps, the government now attempts to retrofit its complaint through opposition briefing. But a pleading is not evidence and should not be treated as such. *See Garrett v. Dintelman*, 2013 WL 4495663, at *3 (S.D. Ill. Aug. 21, 2013). Let alone opposition briefing. In any event, even in its opposition brief, the government's allegations that Mr. Cheng was a knowing participant in a purported fraud scheme are entirely conclusory. The government does not, for example, quote any communications between Mr. Cheng and his alleged "co-schemers," does not cite any evidence that they ever met or spoke, or even allege any method by which they may have coordinated. These are glaring omissions, without which the government cannot establish that Mr. Cheng bears any responsibility for alleged misrepresentation or deceptive conduct by others. Without these essential elements, the wire fraud claim—and the derivative forfeiture action—must fail.

The government's securities fraud claim suffers from the same fundamental deficiency: no allegation of fraudulent intent. Unable to plead actual scienter, the government resorts to temporal correlation as proof of causation, essentially arguing that because Mr. Cheng's legitimate business activities occurred during the same timeframe as alleged fraud by others, he must have known about and participated in the scheme. *See* Dkt. 32 at 23–24. This post-hoc reasoning cannot substitute for the specific factual allegations required to establish fraudulent intent.

More importantly, the government's reliance on inference and speculation inadvertently proves Mr. Cheng's point: these are quintessentially factual disputes requiring trial. By arguing about what Mr. Cheng allegedly knew or intended, the government concedes there are genuine issues for a factfinder to resolve—the precise showing required for a meritorious defense. *Bieganek*, 801 F.2d at 882.

The Seventh Circuit's "well established policy favoring trial on the merits over default judgment" compels vacatur here. *Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007). Mr. Cheng has satisfied every requirement under Rule 60(b): good cause for his default, prompt action in seeking relief, absence of prejudice to the government, and meritorious defenses that raise genuine factual disputes. He is entitled to his day in court.

## CONCLUSION

For the foregoing reasons and authorities, Mr. Cheng respectfully requests the Court to enter an order vacating the entry of default against Subject Account 2.

Date: August 6, 2025

Respectfully submitted,

By: */s/ Tyler C. Murray*
Tyler C. Murray
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400
tylermurray@quinnemanuel.com

Scott A. Hartman (pro hac vice pending)
Jianjian Ye (pro hac vice pending)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000
scotthartman@quinnemanuel.com
jianjianye@quinnemanuel.com

**Counsel for Claimant Ming-Shen Cheng**