**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.

FUNDS IN THE AMOUNT OF
$37,905,571.53 SEIZED FROM
COMPANY A ACCOUNT NUMBER
XXXX8688 HELD IN THE NAME OF
MING-SHEN CHENG,

        Defendant.

No. 25 C 2965

Hon. Jorge L. Alonso

**CLAIMANT'S RESPONSE TO GOVERNMENT'S**
**NOTICE OF SUPPLEMENTAL AUTHORITY**

Claimant Ming-Shen Cheng, by and through undersigned counsel, respectfully submits this

Response to the Government's August 7, 2025 Notice of Supplemental Authority.

The decision that is the subject of the Government's notice, the Second Circuit's recent

decision in *United States v. Bardakova*, 145 F.4th 231, 239 (2d Cir. 2025), does not support, and

in fact undermines, the Government's argument that Mr. Cheng should be denied his due process

rights in this matter.

In *Bardakova*, the Second Circuit considered a scenario altogether different from the one

that the Court is faced with here.  The defendant in *Bardakova* was alleged to have committed the

charged offenses—violations of the International Emergency Economic Powers Act ("IEEPA")

and false statements to law enforcement—while she was physically present in the United States.

*Bardakova*, 145 F.4th at 238–39, 242.  After learning that she was under investigation, Bardakova

left the United States and, despite having traveled here frequently in the past, has not returned

since that time.  *Id.* at 238–39, 245.  Against that factual backdrop, the Second Circuit agreed with

1

the district court's legal determination that Bardakova was a "constructive fugitive," and found that it was not an abuse of discretion to preclude her from moving to dismiss the indictment. *Id.* at 245, 248.

But the factors that supported the Second Circuit's conclusion that Bardakova was a fugitive, as well as those that the district court relied upon to disentitle her, cut the other way in Mr. Cheng's case. Start with the gating issue: whether Mr. Cheng is a "fugitive" for the purposes of the fugitive disentitlement doctrine. The *Bardakova* court recognized "[t]wo categories of fugitives" to which disentitlement may apply: (1) "traditional fugitive[s]," that is, "person[s] who, after committing a crime, flee[] the jurisdiction of the court where the crime was committed," and (2) "constructive-flight fugitive[s]." *Bardakova*, 145 F.4th at 242.

Mr. Cheng is neither. He clearly is not a traditional fugitive: he has never been to Illinois, or even to the United States. Dkt. 19, ¶ 3. So the Government could not claim, and does not claim, that he fled the jurisdiction after committing the alleged crime. Nor is Mr. Cheng a constructive-flight fugitive, as the defendant in *Bardakova* was. "A constructive-flight fugitive is a person (1) who allegedly committed crimes while in the United States but (2) who was outside the country— for whatever reason—when she learned that her arrest was sought and (3) who then refused to return to the United States in order to avoid prosecution." *Bardakova*, 145 F.4th at 242 (cleaned up). Bardakova met this definition, because she was alleged to have committed at least some of the charged conduct while physically present in the United States. *Id.*

Because the same cannot be said of Mr. Cheng, any effort to compare him to Bardakova stumbles out of the gate. Indeed, as the Second Circuit explained, "Bardakova's alleged domestic conduct distinguishe[d] her from defendants," like Mr. Cheng, "whom courts have not considered fugitives—namely, foreign nationals indicted for conduct that occurred entirely abroad." *Id.*

2

(citing *United States v. Bescond*, 24 F.4th 759, 772 (2d Cir. 2021), and *United States v. Cornelson*, 595 F. Supp. 3d 265, 270–71 (S.D.N.Y. 2022)).

The Government disregards this key distinction, dismissing it as irrelevant because "the civil disentitlement statute—28 U.S.C. § 2466—'extends to individuals who have never been in the United States.'" Dkt. 37, at 2 (quoting *Bardakova*, 145 F.4th at 243 n.1). But, the Government ignores the critical weight that the Second Circuit assigned to Bardakova's prior presence in the United States to support its finding that she remained abroad "in order to avoid criminal prosecution," *Bardakova*, 145 F.4th at 245, and that her disentitlement was appropriate under the circumstances, *id.* at 246–47. These requirements apply equally, whether common law doctrine or the civil disentitlement statute is at issue, *see Bardakova*, 145 F.4th at 243, and, as Mr. Cheng has previously explained, the Government cannot meet them in his case. Dkt. 17, at 5–10.

First, the evidence that Mr. Cheng has remained abroad "in order to avoid prosecution," is entirely lacking. As the *Bardakova* court recognized, "[w]hether a defendant remains abroad 'in order to avoid prosecution' is a question of the defendant's intent." 145 F.4th at 242–43. To guide that inquiry with respect to Bardakova, the Second Circuit considered four factors: (1) her nationality and domicile; (2) her prior pattern of travel to the United States; (3) whether she had attempted to return to the United States; and (4) whether she had "legitimate reason[s] for remaining abroad." *Id.* at 243–45. Ultimately the court concluded that Bardakova possessed the requisite intent, because, although she was a "Russian citizen domiciled in Russia[,] . . . every other circumstance cut[] in favor of constructive fugitivity." *Id.* at 245.

The same cannot be said of Mr. Cheng. "Before being indicted, Bardakova traveled to the United States regularly." *Id.* Mr. Cheng, in contrast, has never been here. Dkt. 19, ¶ 3. As for "cooperation with the U.S. government," the *Bardakova* court explained the relevance of that

3

factor by observing that "[s]omeone who attempted to return to the United States but was thwarted by circumstances beyond their control would seem less likely to be avoiding U.S. prosecution than someone who makes no such effort." 145 F.4th at 244. But, as the Second Circuit's reference to "return" indicates, that inference is only justified if the defendant would otherwise have reason to be in the United States, which Mr. Cheng does not. Nor could it be said that Mr. Cheng lacks legitimate reasons for remaining abroad. Unlike Bardakova, who traveled back and forth from the United States frequently, Mr. Cheng's legitimate reason for remaining at home is simply that that is where he has always been. The Court should reject the Government's effort to shift the burden on the intent element, which rightly belongs to it, *see United States v. Technodyne LLC*, 753 F.3d 368, 381 (2d Cir. 2014); *United States v. $525,695.24*, 869 F.3d 412, 420 (6th Cir. 2017), by suggesting Mr. Cheng's continued adherence to what he has always done can somehow be presumed to be evidence of nefarious intent.

Bardakova's prior presence in the United States was similarly crucial to the Second Circuit's conclusion that the district court appropriately exercised its discretion in disentitling her, a portion of the opinion the Government does not discuss. Indeed, on three of the four factors relevant to the inquiry, the Second Circuit relied principally on Bardakova's prior presence in the United States to support its conclusion and to distinguish its prior decision in *United States v. Bescond*. *See Bardakova*, 145 F.4th at 246-47 (discussing *Bescond*, 24 F.4th at 774–75).

But that is a distinction that makes all the difference for Mr. Cheng. As he has explained in previous submissions (Dkt. 17, at 5–10; Dkt. 34, at 3), in Mr. Cheng's case, "disentitlement [is] a disproportionately severe response," because, like the defendant in *Bescond*, and unlike the defendant in *Bardakova*, "other than to avoid a ruinous designation as a fugitive, [Mr. Cheng] ha[s] no reason to travel to the United States." *Bardakova*, 145 F.4th at 246 (quoting *Bescond*, 24 F.4th

4

at 774). For that reason, and for those set forth in Mr. Cheng's prior submissions, the Government's motion to disentitle him should be denied.

Date: September 8, 2025          Respectfully submitted,

By: /s/ *Tyler C. Murray*
Tyler C. Murray
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705–7400
tylermurray@quinnemanuel.com

Scott A. Hartman (pro hac vice pending)
Jianjian Ye (pro hac vice pending)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, NY 10016
(212) 849–7000
scotthartman@quinnemanuel.com
jianjianye@quinnemanuel.com

**Counsel for Claimant Ming-Shen Cheng**